UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| JEREMY A. BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 09-392-GFVT |
| | ) | |
| V. | ) | |
| | ) | |
| SNEED, ET AL., | ) | **MEMORANDUM OPINION** |
| | ) | **AND** |
| Defendants. | ) | **ORDER** |

\*\*\*\* \*\*\*\* \*\*\*\* \*\*\*\*

Defendants Wayne Dietz and Joseph Purta have filed a motion to dismiss or for summary judgment. [R. 35] Plaintiff Jeremy Brown has responded to the motion [R. 47] and has requested the entry of default against defendant David Sneed. [R. 49.] Sneed has not filed a response to Brown's request. For the reasons stated below, the Court will deny both motions.

**I**

On November 18, 2009, Brown filed this civil rights action under 42 U.S.C. § 1983 in the Eastern District of Tennessee. [R. 2.] In his complaint, Brown alleges that on March 20, 2009, while pending transfer to another institution, he was placed in a holding cell at U.S.P. - McCreary in Pine Knot, Kentucky that was uncomfortable and unsanitary and kept there for three days. [R. 2 at 3-4.] On March 23, 2009, Brown and several other prisoners were loaded onto a bus to be transferred to another institution. Several officers of the Bureau of Prisons manned the bus. Defendant John Laing provided internal security, defendant John Sneed drove, and defendant Joseph Purta was stationed at the rear of the bus. Defendants Jeffery Jones and Wayne Dietz transported a low security inmate in a separate vehicle that traveled with the bus.

[R. 35-6, Purta Decl. at 1.]

When the bus began experiencing mechanical problems, officer Sneed pulled off the highway and into a Pilot gas station in Pioneer, Tennessee. [R. 35-1 at 6; R. 35-11 at 2.] Several of the officers exited the bus to look at the engine or use the restrooms at the gas station. Officer Jones was stationed inside the bus to watch the inmates. Brown indicates that an "unknown liquid substance got thrown onto one [of] the defendants' seats..." and that once discovered, the defendants became angry. All of the defendants then held "[an] intence (s*ic*) conversation of conspiracy." [R. 2 at 6.] For his part, officer Jones saw Brown "messing with his restraints" near the rear lavatory area of the bus, and indicates that Brown said something about having urinated on the rear officer's seat. When officer Purta inspected the seat, he noted it was wet and smelled like urine. [R. 35-1 at 7.]

Once Sneed informed officer Laing of these events, Laing ordered Purta and Dietz to stand as perimeter security outside the bus while Brown was removed from the bus to ensure that his restraints were secure and to add more restraints "to deter further disruptive behavior." [R. 35-6, Purta Decl. at 2.] Brown was removed from the caged area of the bus, wearing restraints on his wrists, ankles, and a martin chain connected to a black box, which collectively prevented the inmate from moving his hands or arms away from his waist. [R. 2 at 8.] Brown alleges that once he was outside the bus and standing near the back of it, defendants Sneed and Jones spat on him, threatened him, hit him in the head with a blunt object, and then struck him in the face, torso, and head with their fists. [R. 2 at 8.]

In his complaint, Brown alleged that while defendants Dietz and Purta did not directly participate in these actions, which occurred at the rear of the bus, they "stood by with [their] presence and possession of fire-arms to prevent any defence or escaping the attackers Plaintiff

may [have] had." [R. 2 at 7.] In his declaration, Officer Purta indicates that he was standing towards the front of the bus, while Dietz indicates he was standing on the left side of the bus. [R. 35-6, Purta Decl. at 2; R. 35-7, Dietz Decl. at 2.] Both indicate that from where they were standing, they could not see the altercation and that they did not become aware of it until officer Laing advised them that Brown had to be subdued by force after he elbowed officer Sneed in the stomach. [R. 35-6, Purta Decl. at 3; R. 35-7, Dietz Decl. at 2-3.] They further state that they had no advance knowledge that the attack would occur and did not agree to commit any such act. *Id*. In a declaration filed with his response to their motion, Brown counters that during the assault Purta was standing "off to my left" and Dietz was "standing almost past the left side of the bus but well in view of the assault." [R. 47-1 at 17.] Brown alleges that each saw the assault but took no action to intervene or stop it. [R. 47-1 at 18.]

Brown alleges that after the assault, Sneed and Jones forced him to clean his own blood from his face and off the back of the bus with a blanket. [R. 2 at 9.] Brown was then put back on the bus. Following his arrival at FCI - Talladega, Brown indicates that staff there refused to collect physical evidence of the assault or provide adequate medical care. [R. 2 at 10.] Medical records indicate that Brown was examined by medical staff on March 23, 2009 and that he had suffered abrasions to the right leg and ankle, superficial wounds to the front of his head, and minor abrasions on the back, with no active bleeding and no need for stitches. [R. 35-1 at 7; R. 35-8, Hermani Decl. at 1.]

A subsequent internal investigation by the BOP determined that officer Sneed had assaulted Brown. [R. 35-6; Purta Decl. at 2.] Sneed was later charged with assault by striking, beating, or wounding in violation of 18 U.S.C. § 113(a)(4), an offense he agreed to plead guilty to pursuant to a written plea agreement, on December 6, 2010. [R. 35-11.] On July 7, 2011,

Sneed was sentenced to a two year term of probation. *United States v. Sneed*, No. 3: 10-PO-67 (E.D. Tenn. 2010). Sneed is no longer employed by the BOP. [R. 35-12.]

II

With respect to Dietz and Purta's motion to dismiss, it must be treated as a motion for summary judgment under Rule 56 because they have attached documents and affidavits extrinsic to the pleadings. Fed. R. Civ. P. 12(d). A motion under Rule 56 challenges the viability of the another party's claim by asserting that at least one essential element of that claim is not supported by legally sufficient evidence. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986). If the moving party demonstrates that there is no genuine dispute as to any material fact and that she is entitled to a judgment as a matter of law, she is entitled to summary judgment. *Kand Medical, Inc. v. Freund Medical Products, Inc.*, 963 F.2d 125, 127 (6th Cir. 1992).

The moving party does not need her own evidence to support this assertion, but need only point to the absence of evidence to support the claim. *Turner v. City of Taylor*, 412 F.3d 629, 638 (6th Cir. 2005). The responding party cannot rely upon allegations in the pleadings, but must point to evidence of record in affidavits, depositions, and written discovery which demonstrates that a factual question remains for trial. *Hunley v. DuPont Auto*, 341 F.3d 491, 496 (6th Cir. 2003); *United States v. WRW Corp.*, 986 F.2d 138, 143 (6th Cir. 1993) ("A trial court is not required to speculate on which portion of the record the non-moving party relies, nor is there an obligation to 'wade through' the record for specific facts."). The court reviews all of the evidence presented by the parties in a light most favorable to the responding party, with the benefit of any reasonable factual inferences which can be drawn in his favor. *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005). The court must grant summary judgment if the

evidence would not support a jury verdict for the responding party with respect to at least one essential element of his claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). If the applicable substantive law requires the responding party to meet a higher burden of proof, his evidence must be sufficient to sustain a jury's verdict in his favor in light of that heightened burden of proof at trial. *Harvey v. Hollenback*, 113 F.3d 639, 642 (6th Cir. 1997); *Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1444 (6th Cir. 1993).

Defendants Purta and Dietz argue they are entitled to summary judgment because Brown has failed to adequately allege and demonstrate their participation in a conspiracy to assault him. [R. 35-1 at 8-10.] Brown does not allege that they directly assaulted him, but that they participated in an "intense conversation of conspiracy" before the assault and stood by during it. [R. 2 at 6, 7.] Brown did not overhear the contents of the alleged conversation. A plaintiff alleging a conspiracy to violate his civil rights must show an agreement between two or more persons to injure another by unlawful action. *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003). The facts alleged to support a conspiracy claim "must be pled with some degree of specificity," and "vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under 1983." *Moldowan v. City of Warren*, 578 F.3d 351, 395 (6th Cir. 2009).

Brown has alleged only that before the assault, Purtz and Dietz participated in a conversation of undisclosed subject matter. Brown has presented no evidence to show that the substance or purpose of the conversation was to agree to assault him, and each moving defendant has expressly denied this by declaration. Because nothing in the record supports the allegation that either of these officers agreed to the assault, the state-of-mind requirement is not satisfied. *Spadafore*, 330 F.3d at 854. Brown has therefore failed to provide sufficient evidence that Dietz

or Purta were part of a premeditated conspiracy to assault him. *Amadasu v. The Christ Hosp.*, 514 F.3d 504, 507 (6th Cir. 2008).

Brown has also alleged that Dietz and Purta were present nearby where the assault occurred and, once it began, took no action to stop it. [R. 2 at 7; R. 47-1 at 18.] While the officers state that they were standing farther away from the back of the bus and did not witness the assault or become aware of it until later [R. 35-6, Purta Decl. at 3; R. 35-7, Dietz Decl. at 2], Brown has alleged that they were present or were "well in view of the assault." [R. 47-1 at 17.] Because the record presents conflicting evidence regarding Dietz and Purta's location and knowledge of the assault, summary judgment is not appropriate with respect to Brown's claim that they failed to intercede. *Curry v. Scott*, 249 F.3d 493, 506-07 (6th Cir. 2001); *Browning v. Pennerton*, 633 F. Supp. 2d 415, 432-33 (E.D. Ky. 2009).

### III

Brown has sent a letter to the Clerk of the Court requesting the entry of default against Sneed. [R. 49] The letter is accompanied by a declaration by Brown that Sneed "was served with a copy of the summons and complaint as appears from the proof of service on file" but Sneed "has not filed or served an answer" or other response. [R. 49 at 3.] Brown filed his complaint in this action on November 18, 2009. [R. 2.] Following its transfer to this Court, the Court ordered federal marshals to serve process on July 12, 2010. [R. 13.] All but defendant Jones were served on August 3, 2010. [R. 17] The Court granted the requests of these defendants for additional time, and gave them until December 15, 2010 to respond. [R. 25, 27.] On January 13, 2011, the Court noted that Sneed's failure to file a timely answer or response to the complaint on or before December 15, 2010 placed him in default. [R. 36 at 3.] The Court cautioned Sneed in its February 1, 2011 Order that he must respond to the complaint, but also

noted that pursuant to Federal Rule of Civil Procedure 55(d), "A default judgment may be entered against the United States, its officers, or its agencies only if the claimant establishes a claim or right to relief by evidence that satisfies the court."

On the record before it, the Court finds that default judgment is not warranted. First, Sneed, without the benefit of counsel, filed an answer on February 25, 2011, expressing his intent to defend against the claims asserted against him. [R. 43.] For reasons that are not clear, Brown's motion for entry of default makes no mention of this. While the answer was unquestionably filed beyond the time permitted, courts do not favor judgment by default, and it may be set aside upon a mere showing of good cause. Fed. R. Civ. P. 55(c); *United States v. Goist*, 378 F. App'x 517, 518 (6th Cir. 2010). A court will not permit a party to idly ignore important court deadlines, but entry of judgment by default is the most severe sanction possible for such conduct, and should not be lightly imposed. Further, apart from the fact that Sneed filed his answer too late, Brown has made no effort to "establish[ his] claim or right to relief" by satisfactory evidence as required by Rule 55(d). *Arevalo v. United States*, No. 05-110, 2008 WL 3874795, at *6 (E.D. Pa. Aug. 20, 2008) (court may not enter default judgment against the government merely for failure to file a timely response). The Court will therefore deny the motion for default judgment.

**IV**

Finally, as an administrative matter, it is unclear from the record whether Brown was served with Sneed's answer [R. 43] and whether Sneed was served with Brown's motion for default. [R. 49.] Brown's certificate of service suggests that he served an extra copy of his motion upon Ms. Morgan, co-counsel for Purta and Dietz. He likely did this because, while Sneed has filed an answer, there is no address on file for him. The Court's February 1, 2011

Order permitted the United States Attorney for the Eastern District of Kentucky to withdraw as counsel for Sneed and Jones but required him to continue to serve copies "of all orders entered in this matter upon defendants Snead (*sic*) and Jones ..., until further order of the Court or until new counsel makes an entry of appearance on behalf of Jones or Snead." [R. 40 at 3, 4.] Jones has since appeared through counsel. [R. 45.] Because Sneed has appeared *pro se*, the Order obligates counsel for Dietz and Purta to continue to send him copies of the Court's orders. Unfortunately, this does not provide Brown with a mechanism to serve Sneed (because there is no address on file for him), nor does it provide Sneed with a mechanism to file and serve documents without revealing his home address.

In the interests of preserving the continued safety of a former officer of the BOP, counsel for Purta and Dietz are requested to continue serving the Court's orders upon Sneed. The Court also requests that they serve him with copies of any motions or documents filed by other parties in this action. The Court is aware this imposes additional burdens upon counsel, but its own transmission facilities are ill-suited to the task. Should counsel find that arrangement unworkable or otherwise objects to it, they should promptly advise the Court.

Accordingly, **IT IS ORDERED** as follows:

1. The motion to dismiss, or in the alternative for summary judgment, filed by defendants Wayne Dietz and Joseph Purta [R. 35] is **DENIED;**

2. The request for entry of default against defendant David Bryan Sneed [R. 49] is **DENIED;** and

3. Counsel for Purta and Dietz are requested to serve defendant Sneed with a copy of any motion or document filed by another party to this action.

This the 15th day of August, 2011.

