UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| JEREMY A. BROWN ) | |
| ) | Criminal No. 09-392-GFVT |
| Plaintiff, ) | |
| ) | |
| V. ) | |
| ) | **MEMORANDUM OPINION** |
| SNEED, et al., ) | **&** |
| ) | **ORDER** |
| Defendants. ) | |
| ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff, Jeremy A. Brown, claims that Defendant Laing assaulted him in violation of his constitutional protections from cruel and unusual punishment under the Eight Amendment.[1] [R. 139-1]. For the reasons set forth below, the Court now holds that the Motion for Partial Summary Judgment [R. 139] shall be DENIED in part and GRANTED in part.

**I**

Plaintiff, Jeremy Brown, is an inmate. On May 23, 2009, Defendant Laing with settling co-defendants Sneed, Dietz, Purta and Jones escorted Brown and six other inmates in a transport from U.S.P. McCreary in Pine Knot, Kentucky to F.C.I. Talladega in Alabama. [R. 139-1]. During the journey, the bus had mechanical problems and stopped at a Gas Station. [R. 141 citing Jones Affidavit]. While two Officers positioned themselves as security, other officers

---

[1] At the time of filing this Motion for Partial Summary Judgment both Defendants Jones and Laing were a part of the suit. Since the filing of this Motion, Jones settled and the action against Jones was dismissed. [R. 151]. The only remaining Defendant is Laing and the Court will only consider the Motion with reference to Laing.

went inside the gas station. [R. 141]. After returning from the gas station, Jones was posted inside to watch the inmates. At this time, Jones observed Brown "messing with his restraints" and heard Brown say "he was going to give the officers problems." [R. 141, citing Report of Investigation, Interview with Jones]. It appeared to Jones that Brown was manipulating his restraints and slipped his left hand out of the restraints. [Id.]. Brown asked Jones if he was sitting in the rear seat and, after Jones responded in the negative, stated he had "just pissed" on the seat and it was fortunate Jones was not sitting there. [Id.]. Brown solely admits to pouring a liquid on one of the officer's seats. [R. 139-1 at 1]. Officer Purta confirmed there was liquid on the rear seat that smelled strongly of urine. [R. 141, citing Interview with Jones].

The officers moved the bus to the back of the parking lot and Brown was escorted off, and to the rear, of the bus by Jones, Sneed and Laing. [R. 139-1]. Laing suggests that the bus was moved so additional restraints could be applied to Brown. [R. 141, citing Interview with Jones]. Brown was restrained throughout the course of the alleged assault. [R. 139-1] At this point, the parties recitation of the facts of the assault diverge greatly. For this reason, the Court will summarize both presented scenarios.

Laing, in his Reply to the Motion for Summary Judgment attaches a sworn affidavit that provides the following account. While Brown was escorted to the back of the bus by Jones and Sneed, Laing claims he stopped and "got a martin chain and lock from under the bus." [R. 141]

> As Laing approached the rear of the bus, he stumbled over some uneven pavement and almost fell to the ground. (Laing, 2) As he regained his balance, Laing was approximately ten feet from where Jones, Sneed and Brown were located behind the bus. (Id). As Laing turned to see them, he observed Sneed push Brown into the bus. (Id). As Brown made contact with the bus, Sneed struck Brown two times to the head. (Id.) This occurred rather quickly. (Id.) This occurrence was unexpected to Laing and he was surprised by what he had just seen. (Id.) Since Laing was not in close proximity to Sneed and Brown, he did not have an opportunity to prevent the actions by Sneed. (Id.)
> After striking Brown, Sneed paused and Laing thought the occurrence was over

and began walking toward Jones, Sneed and Brown. (Laing, 2) Unexpectedly, Sneed again struck Brown. (Id.) Laing immediately lunged forward between Sneed and Brown and separated them.

[R. 141]. Laing then suggests that Brown was returned to the bus and the trip continued without further incident. [R. 141].

Brown presents a different factual explanation of the assault.[2] Ironically, this recitation is also based on Interview testimony of Jones and Laing.

> Jones has stated he was standing along Brown while Laing has stated he had a clear view of what happened. [Exhibit A, p. Brown-000394] (Report from Interview of Jones); [Exhibit B, Brown-000409] (Report from Interview of Laing). Laing has stated that he witnessed Sneed first shove his forearm into Brown's chest and push Brown back against the bus. [Exhibit B, Brown -000409]. Laing admits the shove could have resulted in Brown's head striking the back of the bus. *Id.* Neither Jones nor Laing attempted to intervene before Laing says that Sneed punched Brown twice in the head. *Id.* Laing and Jones have both described Sneed as taking a break indicating he was done before coming back and striking Brown again in the head. *Id.*; [Exhibit A, Brown-000394] At this point, Laing states he intervened by stepping between Brown and Laing. [Exhibit C, p. 3].

[R. 139]. According to Jones, following the attack, Brown received a blanket to clean up the back of the bus and himself. [Id. citing Exhibit A, Brown-00394].

Later, Laing admitted that he gave false statements regarding the use of force by Sneed, later telling an Office of Inspector General investigator during an interview that "he was 'trying to protect' his officers at the time." [Id. citing Exhibit B, Brown-000411][3].

---

[2] Brown states in FN 2 of the his Motion for Partial Summary Judgment that he actually recounts a more severe version of facts but, solely for purposes of the Motion for Summary Judgment, accepts a version of the facts based on representations made by Jones and Laing. These facts are presented by Brown as "undisputed" although Laing has presented a different version of facts in his Motion and newly produced affidavit. Brown argues, should this Court deny his Motion for Summary Judgment, that a genuine issue of material fact exists as to who assaulted him and the manner in which the assault took place.

[3] Exhibit B and C of the original Motion for Partial Summary Judgment [R. 139] were incorrectly attached. The Court entered an order [R. 152] requiring the Plaintiff to resubmit the Motion with correctly attached exhibits. The correct exhibits are now available as Exhibit B and C of Record 153.

## II

### A

When considering the issue of summary judgment, a federal court applies the standards of Fed.R.Civ.P. 56 rather than "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr. Inc.*, 807 S.W.2d 476 (Ky. 1991)." *Gafford v. Gen. Elec. Co.* 997 F.2d 150, 165 (6th Cir. 1993). Under Rule 56, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56. A fact's materiality is determined by the substantive law, and a dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the Court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The burden is initially on the moving party to inform "the district court of the basis of its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of a material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may make this showing by demonstrating the absence of evidence to support one of the essential elements of the nonmoving party's claim. *Id*. at 322-25. Once this burden is met, the nonmoving party, "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56. Further, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine

issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Instead, "the non-moving party has an affirmative duty to direct the Court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).

**B**

**1**

Brown argues that Laing faces liability, equal to that of the assailant, for violating Brown's Eight Amendment Right to protection from cruel and unusual punishment. Brown argues that Laing's inaction in preventing the assault makes him equally liable as the person who actually assaulted Brown. [R. 139-1 at 4].

The Sixth Circuit has held that "a correctional officer who observes an unlawful beating, may nevertheless be held liable without actively participating in the beating." *McHenry v. Chadwick*, 896 F.2d 184, 188 (6th Cir. 1990). In the aforementioned situation, "a police officer who fails to act to prevent the use of excessive force may be held liable when (1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997).

Brown suggests that "the issue of an officer's duty to intervene presents a question of law." *Smith v. Mensinger*, 293 F.3d 641, 647 (3rd Cir. 2002). Further, Brown argues that, based on the above test, Officer Laing was under a duty to intervene. Brown argues that Officer Laing "actually observed the assault that constituted excessive force and had the opportunity and means to prevent the harm from occurring." [R. 139-1 at 6]. He argues that Laing had time to intervene but chose to "stand idly by and watch…". [*Id.*]. Brown argues that the Officer's decision to

5

move the bus away from the front of the Gas Station is evidence of Laing's knowledge that excessive force would be used. Brown argues that Laing could have "taken steps to keep the bus from being moved" but chose not to. [R. 139-1].

Laing, in his Response, argues that genuine issues of fact exist for a jury. As has been previously mentioned, out of an abundance of caution and to insure that plenty of genuine issues of material of fact exist, Laing attached an updated affidavit [R. 141-2] to his Response that directly disputes the facts presented by Brown.[4]

Brown, in his reply reiterates his contention that "the question of Defendant Laing's liability hinges on a question of law rather than lying particularly within the province of the factfinder." In support of this proposition he cites a third circuit case that suggests "the issue of an officer's duty to intervene presents a question of law." *Smith v. Mensinger*, 293 F.3d 641, 647 (3rd Cir. 2002). Brown frames the question before the Court as "whether Defendant Laing could have stopped this assault from occurring or continuing" as is required by *McHenry v. Chadwick*, 896 F.2d 184, 188 (6th Cir. 1990). This framing of the issue oversimplifies the analysis.

*McHenry v. Chadwick* holds that "a correctional officer who observes an unlawful beating, **may** nevertheless be held liable without actively participating in the beating." 896 F.2d 184, 188 (6th Cir. 1990) (emphasis added). Even if this Court were to hold, as a matter of law, that Laing had a duty to stop the assault, questions still remain regarding whether he breached that duty. As stated in *McHenry,* Laing "**may**…be held liable without actively participating."

---

[4] Brown argues that the Court should not consider the affidavit filed by Laing as it is self-serving and filed to avoid Summary Judgment. ("[A] party cannot avoid summary judgment through the introduction of self-serving affidavits that contradict prior sworn testimony." *United States* ex rel. *Compton v. Midwest Specialties*, 142 F.3d 296, 303 (6th Cir. 1998). While the Court acknowledges Brown's arguments about the inconsistencies in Laing's past testimony, it is not necessary to rule on the appropriateness of the Affidavit as the Court finds that Summary Judgment is not appropriate on the issue

*Id.* (emphasis added). The facts presented by Brown in this Motion state that Laing did intervene at the end of the altercation. Many questions of fact could be put to a jury regarding the circumstances of this intervention. As Laing argues in his Response, to draw conclusions regarding Laing's inaction, as Brown suggests the Court should do, requires drawing inferences and making conclusions that are inappropriate in the context of a Motion for Summary Judgment. The arguments presented are clear questions of fact for a jury.

### 2

Brown argues that the Assault constituted a violation of Brown's Eighth Amendment rights as excessive force was applied to Brown. [R. 139-1 at 8]. The test for whether force is excessive in violation of the Eighth Amendment has both an objective and a subjective component. Objectively, the harm must be serious. *Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir. 1993) (*citing Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321, 2323, 115 L. Ed. 2d 271 (1991)). Subjectively, the harm must be wanton. The inquiry is as to "whether the use of force could plausibly have been thought necessary, or instead evinced such wantoness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Griffin v. Hardrick*, 604 F.3d 949, 954 (6th Cir. 2010) (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)). Brown argues that the question "ultimately turns on 'whether the force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir. 1993) (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)).

The undisputed facts provide sufficient evidence to satisfy both the objective and subjective components of the excessive force test. It is uncontested that Sneed shoved Brown against the bus

---

of liability even without consideration of the Affidavit in question.

and punched Brown at least three times. Brown cites the guilty plea entered by former co-defendant Sneed as evidence. [R. 139-9]. In that plea, Sneed admits that he "assaulted Brown by striking him." [Id.] Photos exist that capture the injuries levied upon Brown. [R. 95-3]. Following the assault, Brown testified he had to use a blanket to "wipe the blood off my face and the back of the bus." [R. 139-8]. This was corroborated by Jones in his interview. [R. 139-2 at 4]. To address the subjective portion of the test, Brown must show that the force applied was in excess of what was arguably necessary. In arguing this point, Brown argues that Sneed "acted with a sufficiently culpable state of mind" to violate Brown's Eighth Amendment rights. [R. 139-1]. Brown cites testimony where Laing concedes that "in his opinion Sneed [sic] force on Brown was unwarranted, not authorized and excessive." [R. 139-1 at 11 citing Exhibit B, Brown-000410] (see footnote 3). Jones states in his Interview that "Sneed's first two punches were in response to being elbowed and could potentially have been justifiable, but that Jones saw nothing that justified the third punch." [R. 139-2 at 4].

This issue of whether the force applied was in violation of Brown's Eighth Amendment rights is noticeably not addressed by Laing in his Response. In fact, the Affidavit attached to Laing's Response provides factual support for the proposition that Brown was unconstitutionally assaulted. In this affidavit he states "[a]s Brown made contact with the bus, Sneed struck Brown two times to the head….This was an unexpected occurrence to me and I was surprised by what I had just seen." [R. 141-1]. He goes on to say that "unexpectedly, Sneed again struck Brown." [Id.]. In his earlier interrogatory [R. 76-1] Laing stated "he saw defendant Sneed strike plaintiff four times." [R. 76-1 at 3].

Brown and the Court both acknowledge that arguments could be made which attempt to justify the force that was used. Laing could have argued that the force was necessary to detain Brown but these arguments have not been made. Considering the strong record presented about the nature of the attack and Laing's lack of response to the argument, this Court holds that no genuine

issue of material fact exists as to whether the attack on Brown was in violation of the Eighth Amendment right to protection from cruel and unusual punishment.

**3**

Brown makes three final arguments which the Court can resolve in a summary fashion as previous commentary has addressed their main points.

First, Brown argues that Laing faces further liability for his role in supervising the assault on Brown. [R. 139-1 at 12]. In support of this position, Brown cites *Combs v. Skatzes,* which establishes that a supervisor will face liability when "the plaintiff demonstrates that 'the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." 315 F.3d 548, 558 (6th Cir. 2002). Brown suggests that Laing "participated in the assault on Brown in many ways." [R. 139-1]. He states that Laing ordered Brown off the bus and assisted in escorting him outside. These questions of liability, like those posed *supra Part II B 1*, are for a fact finder. Any conclusions drawn about these arguments requires the making of inferences that are inappropriate in the context of summary judgment.

Second, Brown promotes the alternative liability argument that Laing's "deliberate indifference" to Brown violated his Eighth Amendment right to protection from cruel and unusual punishment. [R. 139-1 at 13]. Again, this analysis asks the Court to weigh the evidence and draw conclusions that are inappropriate in the context of summary judgment.

Finally, Brown argues that statements made to the Office of Inspector General and documented in reports of interviews constitute admissible evidence properly before this Court. [R. 139-1 at 14]. This was not contested by Laing, who in fact cited to the interviews in question in his Response. [R. 141] The Court finds it unnecessary to address this issue as well.

**III**

For all the aforementioned reasons, the Plaintiff's Motion for Partial Summary Judgment [R. 139] shall be **GRANTED** in part and **DENIED** in part.

Accordingly, it is hereby **ORDERED** as follows:

1. The Plaintiff's Motion for Partial Summary Judgment on the issue of duty and liability is **DENIED;** and

2. The Plaintiff's Motion for Partial Summary Judgment on the issue of whether an assault in violation of the Eighth Amendment occurred is **GRANTED**.

This 30th Day of September, 2013.

Signed By:
*Gregory F. Van Tatenhove*
United States District Judge